## THE HOWARD C. MOORE.

(District Court, E. D. New York. May 29, 1921.)

Collision ⊂⟹95(2)—Tug in fault for moving into pocket between moving and standing vessels.

A tug, assisting others in towing a steamer from Erie Basin, *held* in fault for a collision with a barge in tow of a tug which had stopped to allow the steamer to pass, for moving into a pocket in front of the steamer and behind the leading tug, from which there was not room for her to pass.

In Admiralty. Suit for collision by Thomas J. Scully, owner of the barge Scully, against the steam tug Howard C. Moore, with the tug Moser impleaded. Decree for libelant against the Moore.

Foley & Martin, of New York City, for libelant.
Herbert Green, of New York City, for claimant John E. Moore Co.
Park & Mattison, of New York City, for the Geo. Moser.

CHATFIELD, District Judge. The libelant's barge Scully, while in tow of the Moser, was struck by the Moore and injured without any apparent fault on the part of the Scully. It is plain, therefore, that the libelant should have a decree.

The action has been brought against the Moore, which has brought in the Moser by petition, and the question of responsibility must therefore be determined as between the tugs. Most of the facts are not contradicted. A steamer had been brought out from a dry-dock slip on the north side of Erie Basin, being pulled out into the Basin stern first, then being turned with her bow going to port so as to head for the gap, and proceeding toward the gap with the tug Red Ash, pulling the steamer with a hawser from the steamer's stem, and apparently of such a length that the Red Ash was 40 to 50 feet ahead of the steamer. One of the helper tugs was at the stern of the steamer, and the other, the Moore, on the starboard side somewhere toward the bow. As the bow of the steamer swung into a position where it was headed directly for the gap, the Moser, with the barge Scully on her starboard side, came in the gap.

The Erie Basin was crowded. Three boats lay off the end of Pier B, while the steamer obstructed the view of the southerly portion of the basin. The Moser answered a one-whistle signal from the Red Ash, by blowing a two-whistle signal, and then crossed the bows of the Red Ash and the steamer, running as close as possible alongside the barges outside of Pier B, and coming to rest in order to let the steamer pass by. The Scully was thus resting in a position where the steamer

would pass very close to her starboard side. The tug Red Ash was but some 20 to 25 feet away from the starboard side of the Scully, and almost abreast of her, when the Moore, which had been directed to pass around to the port side of the steamer, came ahead with the intention of going between the Scully and the Red Ash. It became apparent that the position of the Scully was such that the course of the Red Ash was converging with the side of the Scully and that the Moore could not squeeze through. The captain of the Moore then reversed and threw the head of the Moore slightly to starboard, whereupon the rope fender on the bow of the Moore went into the side of the Scully and damaged a plank in two places opposite the after cleat on the starboard side.

The issue as presented is whether the Moser was at fault in crossing signals with the Red Ash, or whether the Moore was at fault in going ahead, under orders of the captain in charge of the steamer, into a pocket where he could not extricate himself without being squeezed between the Red Ash and the Scully. It is apparent that the space back of the Moore was narrower than the space between the Red Ash and the Scully, because the steamer was considerably wider than the Red Ash. It is also apparent that, if the Moore was close up against the Red Ash, it was impossible for her to extricate herself after reaching the position where her bow was substantially up against the Scully. It was therefore no negligence on the part of the Moore to then reverse and try to squeeze through without damage, if possible. But the fault which may be urged against the Moore is that she had previously gone ahead and reached a position directly in front of the steamer, when she could, with apparent safety, have remained back alongside of the steamer and before reaching the Scully. It is evident that there was space enough for the Moore to remain behind the Scully, because the Moore, of course, was not as wide as the Scully and the Moser.

The two-whistle signal was accepted by the captain of the Red Ash. He did this without any knowledge that the Moore was coming up into this pocket. The Moser did not know at the time of the signal that the Moore was going to come ahead into the pocket. There was no apparent danger to the Red Ash or the steamer by the maneuvers which the Moser executed in crossing the Red Ash's bow. I therefore see no negligence on the part of the Moser in crossing signals and attempting to lie off the end of Pier B, or outside of the boats on the end of Pier B, until the Red Ash and the steamer passed by. None of the parties have alleged any fault against the tug captain on the bridge of the vessel in sending the Moore ahead at just that time, and it must therefore be assumed that it would not be negligence for either the Red Ash or the Moser to consider that the Moore was not going to get herself into danger, if the captain commanding the whole operation gave her orders to proceed ahead of the steamer and around to the port side after the Moser gave the two-whistle signal. It is also apparent that there was no great necessity for the Moore to get around to the port side of the steamer; that is, there was no emergency, because the Red Ash and the steamer passed out safely, even with the added difficulty of the collision between the Moore and the Scully.

So that the only question in the case would appear to be whether the captain of the Moore was sufficiently apprehensive of the position in which he would find himself when he started ahead and put himself directly in the path of the steamer, and into a position where he could not back out. Having reached that position, it seems to the court that an alarm on the part of the Moore would at least have indicated the realization by the captain of the Moore that the quarters were too close for him, and the Red Ash might have sufficiently relieved the pressure by swinging sharply to port. But whichever way it be considered that something might have been done, the fact remains that the captain of the Moore, having mistaken either the time or the space within which he could get around the Red Ash, then merely awaited the outcome and made the best of a bad situation.

As he was responsible for that situation, and as no one else is at fault, it seems to me that the petition and libel of the Moore Company, as owners of the Moore, against the Moser, should be dismissed, and that the libelant should have a decree against the Moore.